IN RE Petition for DISCIPLINARY ACTION AGAINST Shawn Patrick SIDERS, a Minnesota Attorney, Registration No. 0391553.

A17-0514

Supreme Court of Minnesota.

Dated: October 27, 2017

### ORDER

The Director of the Office of Lawyers Professional Responsibility has filed a petition for disciplinary action alleging that respondent Shawn Patrick Siders has committed professional misconduct warranting public discipline by soliciting a minor to engage in prostitution, *see* Act of May 22, 2015, ch. 65, art. 6, § 11, 2015 Minn. Laws 474, 527-28 (codified as amended at Minn. Stat. § 609.324, subd. 1(c)(3) (2016)), and failing to cooperate with the Director's investigation. *See* Minn. R. Prof. Conduct 8.1(b), 8.4(b); Rule 25, Rules on Lawyers Professional Responsibility (RLPR). As part of entering into a stipulation for discipline with the Director, respondent has waived his procedural rights under Rule 14, RLPR, and admitted the allegations listed in the petition, including that he violated the Minnesota Rules of Professional Conduct and Rules on Lawyers Professional Responsibility when he committed the misconduct. The parties jointly recommend that the appropriate discipline

is an indefinite suspension with no right to petition for reinstatement for 2 years.

"The purpose of discipline for professional misconduct is not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Engel*, 859 N.W.2d 788, 789 (Minn. 2015) (order). In determining the appropriate discipline to impose, we consider "the nature of the misconduct, the cumulative weight of the violations, the harm to the public, and the harm to the legal profession." *In re Hummel*, 839 N.W.2d 78, 81 (Minn. 2013). "Because we strive for consistency in attorney discipline, we look to similar cases for guidance in setting the proper sanction." *In re Rooney*, 709 N.W.2d 263, 268 (Minn. 2006).

Respondent's conduct was a serious breach of the standards of professional conduct required of an attorney licensed in Minnesota. Respondent pleaded guilty to a felony punishable by up to 5 years in prison. *See* Minn. Stat. § 609.324, subd. 1(c)(3). "We generally view felony convictions as serious misconduct." *In re Pitera*, 827 N.W.2d 207, 210 (Minn. 2013) (quoting *In re Perez*, 688 N.W.2d 562, 567 (Minn. 2004)) (internal quotation marks omitted). But respondent's criminal conduct in this case was unrelated to the practice of law, and "[w]hen an attorney commits criminal conduct unrelated to the practice of law ... [w]e have typically imposed suspensions or public reprimands." *Id.* (quoting *In re Farley*, 771 N.W.2d 857, 864 (Minn. 2009)) (second alteration in original) (internal quotation marks omitted). In addition, respondent failed to cooperate with the disciplinary process. Noncooperation, by itself, is serious misconduct, and "we typically increase the severity of the disciplinary sanction where noncooperation exists." *In re Montez*, 812 N.W.2d 58, 69 (Minn.

2012) (quoting *In re Nelson*, 733 N.W.2d 458, 464 (Minn. 2007)) (internal quotation marks omitted) (alteration omitted).

We have typically imposed indefinite suspensions when attorneys have committed acts of criminal sexual conduct or other sexual offenses involving minors when the criminal acts at issue do not arise out of the practice of law. In *In re Bohanek*, for example, the attorney pleaded guilty to online solicitation of a minor for sexual conduct, Tex. Penal Code Ann. § 33.021(c) (West 2016), based on an incident in which the attorney had a sexually explicit conversation with, and arranged to meet, an undercover police officer whom the attorney believed to be a 14-year-old girl. *See In re Bohanek*, No. A15-0462, Order at 1 (Minn. filed Apr. 6, 2015). Under Texas law, the attorney's crime was a felony of the second degree, Tex. Penal Code Ann. § 33.021(f) (West 2016), punishable by up to 20 years in prison, Tex. Penal Code Ann. § 12.33(a) (West 2011). Despite the lengthy sentence authorized by Texas law, we imposed an indefinite suspension for a minimum of 3 years. *Bohanek*, No. A15-0462, Order at 1.

In *In re Scannell*, 861 N.W.2d 678, 679 (Minn. 2015) (order), we also imposed a minimum 3-year indefinite suspension for a county attorney who pleaded guilty to two counts of fourth-degree criminal sexual conduct, Minn. Stat. § 609.345, subd. 1 (2016), carrying a potential sentence of up to 10 years in prison for each count, *id.*, subd. 2. The attorney in *Scannell* had also made derogatory statements on his blog about criminal defendants whom he was prosecuting. *Scannell*, 861 N.W.2d at 679. And in *In re Blashack*, 793 N.W.2d 437, 437 (Minn. 2011) (order), the attorney pleaded guilty to one count of fourth-degree criminal sexual conduct, Minn. Stat. § 609.345, subd. 1, the same charge as in *Scannell*. Once again, we imposed a minimum 3-year indefinite suspension on the

attorney, a disciplinary period much shorter than the maximum sentence for the underlying crime. *Blashack*, 793 N.W.2d 437; *see* Minn. Stat. § 609.345, subd. 2 (2016) (providing for a penalty of up to 10 years in prison).

Respondent's misconduct is no doubt serious. But as measured by the possible sentence that the Legislature has authorized for the crime, the offense to which respondent pleaded guilty was less serious than the crimes committed in *Bohanek*, *Scannell*, and *Blashack*. Each of those cases involved one or more offenses punishable by 10 or more years in prison, whereas respondent's single offense involved a maximum 5-year sentence. Even considering that respondent committed additional misconduct by failing to cooperate with the Director's investigation, we conclude that a shorter suspension than the minimum 3-year suspensions imposed in *Bohanek*, *Scannell*, and *Blashack* will fulfill the purposes of attorney discipline. Furthermore, "we give some deference to the Director's decision to enter into a stipulation," *In re Riehm*, 883 N.W.2d 223, 235 (Minn. 2016), and note that the jointly recommended discipline in this case falls well within the range of sanctions imposed in other similar cases, including *Bohanek*, *Scannell*, and *Blashack*. We conclude, therefore, that the parties' recommended disposition is sufficient to protect the public and the judicial system and to deter future misconduct.

The dissent advances several reasons why it views a 2-year minimum suspension as inadequate, none of which we find persuasive. First, the dissent argues that we cannot know whether this is the first time that respondent has attempted to solicit a minor for prostitution—that is, whether he is a "serial predator"—and therefore we cannot determine whether a lengthier suspension or even disbarment might be appropriate. But that makes this case no different than every other case of misconduct that comes before the court. As in every other case, we must determine the appropriate discipline based on the allegations of the petition and the record before us. We are confident that the Director has thoroughly investigated respondent's activities and that if she were aware of any other credible evidence that respondent had committed any other crimes, she would have brought it to our attention in the petition.

Second, the dissent claims that respondent's conduct was an attempt to commit fourth-degree criminal sexual conduct, Minn. Stat. § 609.345, subd. 1(b)—the inchoate version of the crime committed in *Scannell* and *Blashack*—and that he should receive at least a 3-year suspension because it is no less dangerous to attempt a crime than to actually commit it. The flaw in the dissent's argument, however, is that we have no finding in the record before us that respondent attempted to commit fourth-degree criminal sexual conduct. Moreover, the Legislature itself disagrees with the dissent's assessment of the relative gravity of each crime: an attempt to commit fourth-degree criminal sexual conduct, Minn. Stat. § 609.345, subd. 1(b), is punished no more harshly than soliciting a minor to engage in prostitution, Minn. Stat. § 609.324, subd. 1(c)(3). For the commission of either crime, the maximum possible sentence is 5 years in prison, half of the maximum penalty for actually committing the crime of fourth-degree criminal sexual conduct. *See* Minn. Stat. § 609.345, subd. 2 (providing a 10-year penalty for fourth-degree criminal sexual conduct); Minn. Stat. § 609.17 (2016) (stating that the penalty for attempted crimes is half of the penalty of the underlying offense); Minn. Stat. § 609.324, subd. 1(c)(3) (setting a 5-year penalty for soliciting a minor to engage in prostitution).

Third, the dissent says that we should suspend respondent for at least as long as the time remaining on his criminal probation, consistent with *In re Farley*, 771 N.W.2d 857, 866 (Minn. 2009), and *In re Kimmel*, 322 N.W.2d 224, 227 (Minn. 1982). The dissent claims to recognize that "the probationary period is not a litmus test." *See Farley*, 771 N.W.2d at 866. But by insisting that a suspension shorter than respondent's criminal probation would be improper, the dissent ignores *Farley*'s warning.

Like any attorney who is indefinitely suspended, respondent will not be able to practice law again until he successfully petitions for reinstatement in accordance with the requirements and procedures in Rule 18, RLPR. *Riehm*, 883 N.W.2d at 235. Among other things, "an attorney applying for reinstatement must establish by clear and convincing evidence that ... he has undergone such a moral change as now to render him a fit person to enjoy the public confidence and trust once forfeited." *In re Singer*, 735 N.W.2d 698, 703 (Minn. 2007) (quoting *In re Jellinger*, 728 N.W.2d 917, 922 (Minn. 2007)) (internal quotation marks omitted). Under these circumstances, we believe that a minimum 2-year indefinite suspension adequately protects the public and the judicial system.

Accordingly, we approve the recommended disposition.

Based upon all the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Respondent Shawn Patrick Siders is suspended from the practice of law, effective 14 days from the date of the filing of this order, with no right to petition for reinstatement for 2 years.

2. Respondent may petition for reinstatement under Rule 18(a)-(d), RLPR. Reinstatement is conditioned on successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility; satisfaction of continuing legal education requirements under Rule 18(e), RLPR; and compliance with the terms of his criminal probation, as set forth in the district court's February 22, 2017 sentencing order.

3. Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals), and shall pay $900 in costs, plus interest, under Rule 24, RLPR.

BY THE COURT:

/s/ _____

David R. Stras
Associate Justice

## DISSENT

MCKEIG, Justice (dissenting).

Today the court suspends an attorney for 2 years for attempting to sexually prey upon a 15-year-old girl. I cannot agree that a 2-year suspension is sufficient to protect public safety when I do not know whether Shawn Patrick Siders is a one-time predator or a serial predator. And even if he is the former, a 2-year suspension is insufficient. I respectfully dissent.

### I.

We discipline attorneys to protect the public and deter future misconduct. *In re Rooney*, 709 N.W.2d 263, 268 (Minn. 2006). Our decisions consider the harm the attorney has done, as well as sanctions imposed in factually similar cases. *Id.* The court cannot determine, based on the stipulation between Siders and the Director, whether this is the only time Siders has tried to pay

for and engage in sex with a minor.[1] Without this information, we cannot assess the harm that he has inflicted, the threat that he poses to the public and the profession, or the threat that he could pose if reinstated.[2] We also cannot identify comparable cases to consistently sanction his misconduct.

## II.

Even if Siders is a one-time offender, a 2-year suspension is inconsistent with our past decisions and insufficient to address the severity of Siders's conduct.

## A.

Siders attempted to commit an act that is fourth-degree criminal sexual conduct under Minn. Stat. § 609.345, subd. 1(b) (2016). We have suspended attorneys for 3 years for committing this crime. *In re Scannell*, 861 N.W.2d 678, 679 (Minn. 2015) (order); *In re Blashack*, 793 N.W.2d 437, 437 (Minn. 2011) (order). We have also suspended an attorney for 3 years for soliciting a minor for sex online. *In re Bohanek*, No. A15-0462, Order at 1 (Minn. filed Apr. 6, 2015). The majority distinguishes *Scannell* and *Blashack* because Siders only *attempted* to commit criminal sexual conduct.[3] *Bohanek* shows that this a distinction without a difference. Siders is not any less dangerous to the public and the profession just because law enforcement interrupted his attempt to commit criminal sexual conduct.

Moreover, Siders's failure to cooperate with the Director's investigation of his criminal charges makes his case more serious. A lawyer being investigated by the Director's Office has a duty to cooperate with that investigation. Rule 25(a), Rules on Lawyers Professional Responsibility (RLPR). Noncooperation is an independent ground for discipline. Rule 25(b), RLPR. Siders refused to cooperate with the investigation for 10 months. None of the attorneys in *Scannell, Blashack,* or *Bohanek* failed to cooperate with the investigations of their conduct. Siders's refusal to cooperate warrants a greater sanction than we imposed in these comparable cases.

## B.

It is also inconsistent with our precedent to suspend Siders for only 2 years (until November 2019) when his criminal probation lasts 5 years (until February 2022). We have previously suspended attorneys convicted of crimes, including sex crimes involving minors, based on the length of their criminal probation. *See In re Farley*, 771 N.W.2d 857, 866 (Minn. 2009) (sus-

---

1. The majority is "confident" that the Director's Office thoroughly investigated Siders and did not find evidence of other crimes because it does not mention other crimes in the petition for discipline. But nothing in the petition or stipulation actually establishes that such an investigation took place. The majority effectively assumes that the absence of evidence is evidence of absence.

2. Siders claimed he would abandon the practice of law, but only in an effort to end the Director's investigation. Given this context, we cannot know whether Siders was sincere or will seek reinstatement.

3. The majority's claim that there is no finding in the record that Siders attempted to commit fourth-degree criminal sexual conduct is incorrect. As noted in the Director's petition for discipline, Siders admitted that he drove to a Coon Rapids apartment with $80 in his pocket to pay for sex with a fifteen-year-old girl. The record thus shows that Siders attempted to engage in fourth-degree criminal sexual conduct. *See* Minn. Stat. § 609.345, subd. 1(b) (defining fourth-degree criminal sexual conduct as sexual contact where the complainant is between the ages of 13 and 16 and the offender is at least 48 months older); *see also* Minn. Stat. § 609.17, subd. 1 (2016) (defining attempt to commit a crime).

pending attorney for 1 year to match his probationary period); *In re Kimmel*, 322 N.W.2d 224, 226-27 (Minn. 1982) (suspending attorney for the remainder of his criminal probation); *see also In re Hanson*, 592 N.W.2d 130, 130-31 (Minn. 1999) (order) (suspending attorney for 5 years or until her successful discharge from criminal probation, whichever is later); *In re Olkon*, 324 N.W.2d 192, 196 (Minn. 1982) (suspending attorney for the remainder of his criminal probation). Although the probationary period "is not a litmus test," it is a factor that we usually consider when disciplining attorneys for crimes committed outside the practice of law. *Farley*, 771 N.W.2d at 866. Siders should at least be suspended for the remainder of his criminal probation, consistent with the suspensions we imposed in *Farley*, *Kimmel*, *Olkon*, and *Hanson*.

### III.

We "regulate the legal profession in view of the public." *In re Crissey*, 645 N.W.2d 141, 143 (Minn. 2002). Soliciting vulnerable minors online "cause[s] harm to the public" and "seriously undermines public confidence in the legal profession." *Farley*, 771 N.W.2d at 866. Siders has admitted to a serious crime that endangers the public. Imposing inconsistent and insufficient discipline on Siders without knowing whether he is a serial predator undermines the public's confidence in the judiciary. Accordingly, I respectfully dissent.

LILLEHAUG, Justice (dissenting).

I join in the dissent of Justice McKeig.